IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY WALKER, | No. C 06-4931 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| VIACOM INTERNATIONAL, INC., *et al.*, | |
| Defendants. | |

On May 7, 2008, the Court heard argument on defendants' motion for summary judgment. Having considered the arguments of counsel and the parties' papers, the Court hereby GRANTS defendants' motion.

## BACKGROUND

Plaintiff Troy Walker has sued defendants Viacom International Inc., Nickelodeon Studios, Inc., Paramount Studios, Inc., and Stephen Hillenburg, the creator and Executive Producer of the animated children's television series on Nickelodeon called SpongeBob SquarePants ("SBSP"), alleging that defendants' series infringes plaintiff's copyright for his comic strip "Mr. Bob Spongee 'The Unemployed Sponge.'"

### I.   Plaintiff's comic strip and novelty sponge

Plaintiff Troy Walker is an artist living in northern California.  Plaintiff claims that in the fall of 1991 he drew a four-panel, black and white comic strip titled "Mr. Bob Spongee, The Unemployed

Sponge." Walker Decl. ¶ 4 & Ex. A (comic strip)[1] The main character is Mr. Bob Spongee, a single dimension, rectangular-shaped kitchen sponge with arms, legs and shoes, round googly eyes, line eyebrows, a dot for a nose and a line for a mouth. According to the strip, he lives with his wife Linda and daughter Bubbles on Apple Street, in a small house with a pitched roof and picket fence. The third panel of the strip says, "Mr. Spongee Use [sic] To Work At The Local Soap Factory . . .", and the fourth and final panel says, "One Day He Was Told By His Foreman That He Was Laid Off . . ." *Id*. Ex. A. This is the only comic strip that plaintiff created.

Later in 1991 Walker created his novelty sponges, which consisted of various colored kitchen sponges (yellow, light pink, and turquoise), on which he drew a mouth and nose with a felt-tip marker, and to which he and his mother affixed prefabricated "googly eyes." Duffy Decl. Ex. A at 71-73 (Walker Depo.); Ex. C at 23:20-22 (Jean Walker Depo.); Ex. D (picture of sponge).[2] Walker glued his comic strip to the back of these sponges and put them in clear plastic packages with a header card, the front of which pictured another representation of Mr. Spongee and contained the caption, "Sponge For Hire – MEET Bob Spongee, THE UNEMPLOYED SPONGE." *Id*. Ex. D.[3] Walker distributed approximately one thousand of these sponges between January 1992 and November 1992 in the San Francisco Bay Area in shopping centers, street fairs, flea markets, on the side of the road, and at stops along the Grapevine area of Highway 5. Walker Decl. ¶ 6; Duffy Decl. Ex. B Nos. 5, 6, 8; Ex. A at 149:13-24; 150:6-7; 152:5-153:14. Most of the novelty sponges were distributed in the "707" area code. Duffy Decl. Ex. B, No. 8.

Walker also advertised the sponge doll in the international classified pages of the *Oakland*

---

[1] Defendants have objected to portions of plaintiff's declaration on numerous grounds. The Court sustains these objections, finding that numerous statements are argumentative, lack foundation, and/or contain impermissible legal conclusions. For example, plaintiff states in his declaration that defendants "copied" his work, that Mr. Bob Spongee and SpongeBob SquarePants are "strikingly similar," and that the pilot episode for SBSP "represents an obvious continuum from the last scene of the BOB SPONGEE comic strip." The Court also sustains defendants' objection to Exhibit F to plaintiff's declaration. Plaintiff prepared that exhibit, which consists of "various graphics to illustrate the amazing similarities between BOB SPONGEE and SPONGEBOB." Walker Decl. ¶ 16 & Ex. F. This exhibit is argumentative, conclusory, and contains hearsay.

[2] Walker no longer has any of the original sponges; he recreated the sponges for this litigation.

[3] Walker no longer has any of the header cards, so this information is provided from memory in Walker's declaration.

2

1  *Tribune* on approximately six occasions in 1991 under the caption "SPONGE FOR HIRE! Meet BOB
2  SPONGEE, The Unemployed Sponge"; the character depicted in the advertisement differs from the
3  comic strip drawing in that the advertisement sponge wears a hat and shirt, has hair, different-shaped
4  eyes, a larger rounded nose, and different shaped mouth. *Id*. Ex. M (advertisement). Walker sold fewer
5  than twenty sponges through this advertisement. *Id*. Ex. B, No. 9.  Walker stopped all sales and
6  distribution of the sponges in November 1992. *Id*. No. 5.

7  Walker has admitted that the comic strip was published solely through his personal distribution
8  of the novelty sponge, and that he has no knowledge of ever having sent it to any defendant or anybody
9  affiliated with any of them, whether affixed to the sponge or otherwise. *Id*., Nos. 3, 16.

10  In April 2003, after defendants' television series SpongeBob SquarePants first aired, Walker
11  registered his comic strip with the United States Copyright Office. First Amended Complaint, Ex. 4.
12  This is the only work for which Walker has a copyright registration. Duffy Decl. Ex. B, Nos. 1, 2.

13

14  **II.    SpongeBob SquarePants**

15  Stephen Hillenburg, the creator of SpongeBob Square Pants, describes the animated series as
16  follows:

> *SpongeBob SquarePants* is an animated series aimed at pre-teens. The Series is set under the sea in the Pacific Ocean, a few fathoms beneath the tropical isle of Bikini Atoll, in the subsurface city of Bikini Bottom. . . . Much of the action takes place at the Krusty Krab where SpongeBob SquarePants works and many of his friends visit. Other settings include SpongeBob's pineapple house, Jellyfish Fields, and Goo Lagoon, to name a few. . . .
>
> The central character of the Series, SpongeBob SquarePants, is a rectangular yellow porous sea sponge, who almost always wears brown pants, which make him appear squarish rather than rectangular, a white shirt, a red tie, athletic socks and black shoes. As an animated character, he has innumerable facial expressions, but he is often seen with his mouth open showing two protruding teeth, like a big kid. He has round expressive eyes with blue irises and exactly three eyelashes above each eye. He lives in a fully furnished pineapple under the sea, with his pet snail, Gary.

Hillenburg Decl. ¶¶ 16-17.

Hillenburg states that the idea for SpongeBob SquarePants dates back to 1989, when he was working as an instructor and staff artist at the Orange County Marine Institute and created an educational comic book featuring talking sea creatures, including an amorphous-shaped sea sponge

3

named "Bob the Sponge." Duffy Decl. Ex. E at 53:5-18, 61:1-13 (Hillenburg Depo.); Hillenburg Decl. Ex. A (portions of comic book "The Intertidal Zone" featuring "Bob the Sponge"). Hillenburg states that during a few summers after graduating from high school, he worked as a fry cook and lobster boiler at a restaurant in Maine, and that this experience later became the inspiration for the job held by the main character in the SBSP series, who is the fry cook at the "Krusty Krab" fast food restaurant. Hillenburg Decl. ¶ 2. Hillenburg has a degree in Natural Resources, Planning and Interpretation with an emphasis in Marine Resources, and he states that he has had an interest in and love for the ocean since he was a child. *Id.* ¶ 3.

Five years later, in 1994, while Hillenburg was working as the art director for another animated cartoon series on Nickelodeon, Hillenburg began developing the character and concepts for what became SBSP. Hillenburg states,

> Drawing on my background as a marine biologist, my love for the ocean and all of the characters and the setting of The Intertidal Zone, I decided to make an under-the-sea show starring many of the characters inspired by The Intertidal Zone but steeped in surf culture and nautical kitsch (for example, rope works, barrels and treasure chests). I wanted the star of the show to be an innocent nerd and I thought again of a sea sponge as it is bizarre and versatile, and very elastic (it can supposedly reshape itself if placed in a blender) much like cartoon characters that miraculously reform after calamitous disasters. Its goofy shape is also easy to animate because it can emote and communicate through its various shapes.
>
> Around the fall of 1994, starting with my "Bob the Sponge" character from The Intertidal Zone, I began conceptually drawing in what became several sketch books. [Copies of a few exemplars from early drawings are attached as Exhibit C to Hillenburg's declaration] As these drawings progressed, I began to narrow in on specific concepts and I started to add more detail. For example, [on one page] there is more detail on the eyes, the character now has irises and three eyelashes, he has two buck teeth and he's wearing a tie, pants, shoes and a hat.
>
> As it was common practice to share ideas, sketches and story lines for prospective pitches with co-workers during the creative process to gain perspective and feedback, I shared my concepts for the show and many of my early drawings with several of my co-workers on *Rocko's Modern Life*, including Nick Jennings, Mark O'Hare and Derek Drymon, all of whom, I have been informed, have had their depositions taken in this action. I also showed my drawings to Adriana Galvez, a background painter on *Rocko's Modern Life*; I am informed that her deposition has also been taken. Adriana suggested that I consider a sink sponge as the design for my character, instead of a natural-shaped sea sponge. With her suggestion in mind, I revised my drawings, retaining the idea of a living sea sponge, but locking onto the idea of a square shape, which I thought fit perfectly the innocent, nerd image and the series theme of a character forever stuck between a boy and a man. By the spring of 1995, I had drawn what I consider to be the first drawing of SpongeBob SquarePants or, as he was then known, "Sponge Boy". [Drawing is attached as Exhibit D to Hillenburg's declaration]

4

1  *Id.* ¶¶ 8-10.

2  Hillenburg and others pitched the SBSP idea to Nickelodeon, and in 1997, Hillenburg created
3  the pilot, entitled "Help Wanted." *Id.* ¶¶ 12-13. Hillenburg states that sometime after completing the
4  pilot, while the sponge character was still called "Sponge Boy," he learned that they could not use that
5  name because a third party held a trademark in that name, and so he reverted back to "Bob" of the Bob
6  the Sponge from The Intertidal Zone. *Id.* ¶ 14. According to Hillenburg, the addition of "SquarePants"
7  as the character's last name was inspired when Tom Kenny, who became the voice of SpongeBob
8  SquarePants, described the character as a sponge with square pants and a tie. *Id.*

9  The SBSP show was picked up for series production, with the first episode airing in 1999. Since
10 that time, over one hundred episodes have been created spanning six seasons. *Id.* ¶ 15. One of several
11 compilation DVDs that have been released is titled "Sponge for Hire." *Id.*

## LEGAL STANDARD

14 Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,
15 and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any
16 material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.
17 56©.

18 In a motion for summary judgment, "[if] the moving party for summary judgment meets its
19 initial burden of identifying for the court those portions of the materials on file that it believes
20 demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so
21 that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts
22 showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors*
23 *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In
24 judging evidence at the summary judgment stage, the Court does not make credibility determinations
25 or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving
26 party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*
27 *Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence
28 presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative

**United States District Court**
For the Northern District of California

testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

"A plaintiff bringing a claim for copyright infringement must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (internal quotations omitted). Where, as here, there is no evidence of direct copying – and plaintiff does not claim otherwise – the second element requires plaintiff to prove that defendants had access to plaintiff's copyrighted work and that there is substantial similarity of protected elements between the two works. *See Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). "[S]ummary judgment is appropriate if, after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party, no reasonable jury could find substantial similarity of ideas and expression." *Funky Films*, 462 F.3d at 1076. Although "'summary judgment is not highly favored on the substantial similarity issue in copyright cases,' *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985), substantial similarity 'may often be decided as a matter of law.' *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)." *Id.* at 1076-77.

To determine whether two works are substantially similar, courts apply a two-part analysis: an extrinsic test and an intrinsic test. *Metcalf v. Bochco*, 294 F.3d 1069, 1073 (9th Cir. 2002). "For summary judgment, only the extrinsic test is important." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir.1994). "[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Id*.

The Ninth Circuit has stated that the extrinsic test is an objective measure of the "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Id.* (citation and internal quotation marks omitted). In applying the extrinsic test, courts must distinguish between the protectable and unprotectable material because a party claiming infringement may place "no reliance upon any similarity in expression resulting from unprotectable elements." *Apple Computer,*

6

*Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (citation and internal quotation marks omitted).

## I.     Protection for the "Bob Spongee" character

Prior to filing suit, plaintiff obtained copyright registration for "BOB SPONGEE 'The Unemployed Sponge'" as a "Cartoon and Comic Strip." FAC, Ex. 4. Attached to the application was a copy of the comic strip only; neither the sponge doll nor the *Oakland Tribune* advertisement was included with the application. Defendants contend that plaintiff's copyright claim must be based solely on the comic strip because plaintiff did not register either the doll or the advertisement, and because the depictions of "Bob Spongee" are different in the comic strip, the doll, and the *Oakland Tribune* advertisement.

Plaintiff contends that the Bob Spongee character is entitled to copyright protection as a stand-alone character because he is an extremely consistent, distinct and identifiable character who "dominates" the comic strip. A character (as opposed to the work in which it appears) is protectable if it is "especially distinctive" such that it has widely "identifiable traits." *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 755-56 (9th Cir. 1978) (extending protection over *Mickey Mouse* and other Disney characters with distinctively delineated visual and conceptual characteristics); *Toho Co., Ltd. v. William Morrow & Co., Inc.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998) (same for Godzilla); *Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Corp.*, 900 F. Supp. 1287, 1297 (C.D. Cal. 1995) (same for James Bond).

Here, the comic strip consists of four small and largely uninformative black and white panels. From them, all the reader learns is that "Mr. Bob Spongee" lives on Apple Street, has a wife (Linda) and daughter (Bubbles), that he used to work in a soap factory, and that he is now unemployed. The strip conveys nothing about Linda and Bubbles (neither of whom appears to be a sponge), and little to no information about Mr. Bob Spongee's personality or character traits; Mr. Bob Spongee appears in two of the four panels, he is smiling in one panel, and has what could be described as a concerned expression in the other. There is very little story line. Mr. Bob Spongee's physical traits are similarly ill-defined. He is one-dimensional; he is rectangular with hands, legs and feet but no clothing; the sponge does not

7

1 have any texturing; and his facial features are simplistic with lines for eyebrows, round eyes, a dot for
2 a nose, and a line for a mouth.

3 Not only is the comic strip character not distinctive, but Mr. Bob Spongee is not consistently
4 depicted between the comic strip, the sponge doll, and the *Oakland Tribune* advertisement. The sponge
5 "doll" was produced in three different colors, had movable "googly eyes," and did not have arms or legs,
6 while the *Oakland Tribune* advertisement version does not even appear to be a sponge. Instead, the
7 drawing looks more human,[4] has hair, ears, different shaped eyes and nose, is wearing a hat and a shirt,
8 and wearing different shaped shoes than in the comic strip. This lack of consistency defeats plaintiff's
9 claim that the stand-alone character of "BOB SPONGEE" is protected. *See Rice v. Fox Broadcasting*
10 *Co.*, 148 F. Supp. 2d 1029, 1056 (C.D. Cal. 2001) (no protection for "Mystery Musician" because he
11 was not consistently portrayed in various appearances), *aff'd on point, rev'd on other grounds*, 330 F.3d
12 at 1175 (9th Cir. 2003); *cf. Toho*, 33 F. Supp. 2d at 1216 (Godzilla protectable as a character because
13 "Godzilla has likewise developed a constant set of traits . . . [with] an underlying set of attributes that
14 remain in every film. Godzilla is always a pre-historic, fire-breathing, gigantic dinosaur alive and well
15 in the modern world."). Thus, plaintiff's copyright infringement claim must be based on the Mr. Bob
16 Spongee comic strip, and not on the novelty doll or the *Oakland Tribune* advertisement.

17

18 **II.    Access**

19 Defendants contend that plaintiff cannot raise a triable issue of fact as to whether defendants had
20 access to plaintiff's creation. To prove access, plaintiff must show that defendants had a reasonable
21 opportunity to view or copy plaintiff's work prior to the creation of SBSP. *See Three Boys Music Corp.*
22 *v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). Reasonable opportunity is "more than a bare possibility."
23 *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982); *Three Boys*, 212 F.3d at 482. "Of course, reasonable
24 opportunity as here used, does not encompass any bare possibility in the sense that anything is possible.
25 Access may not be inferred through mere speculation or conjecture. There must be a reasonable
26 possibility of viewing the plaintiff's work – not a bare possibility." *Three Boys*, 212 F.3d at 482

27
28     [4] Indeed, the Court notes that the *Oakland Tribune* advertisement version strongly resembles "Barney Rubble" from the animated television series, *The Flintstones*.

(quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.02[A], at 13-19).

Here, defendants have submitted the following evidence showing that they did not have access to plaintiff's work prior to the creation of SBSP: (1) Hillenburg denies having seen or heard of Walker's works prior to this lawsuit; (2) Walker has admitted that he did not send the comic strip (or the novelty sponge) to any defendant, or to anyone known to be affiliated with them; (3) Walker cannot identify any of the approximately twenty individuals who purchased a novelty sponge through his newspaper advertisement, nor has he established a link between anyone who purchased a sponge and any defendant. In addition, there is no evidence that the comic strip was widely disseminated; the comic strip was never published except on the package header and glued to the back of less than one thousand novelty sponges. Any unsold sponges were destroyed soon after November1992. Duffy Decl. Ex. A at 141:14-24; 93:1-94:8; Ex. B, Nos. 3-6.

Plaintiff has not submitted any evidence showing that any defendant, or anyone associated with any defendant, had access to his work prior to the creation of SBSP. Instead, plaintiff asserts that there is evidence of access because Hillenburg traveled to Sonoma in northern California for New Year's Eve in 1991/1992, and to San Francisco for New Year's Eve 1993/1994. Duffy Decl. Ex. E at 43-46. The Court notes that these visits both pre- and post-dated the period (January - November 1992) when plaintiff was distributing the novelty sponges. Plaintiff also suggests that Hillenburg had access to plaintiff's works because Hillenburg's brother lived in San Jose during the 1990s; however, plaintiff has not submitted any evidence showing that Hillenburg's brother had access to plaintiff's work.

Plaintiff's showing falls far short of raising a triable issue of fact on access. The Court finds instructive *Jason v. Fonda*, 526 F. Supp. 774 (C.D. Cal. 1981), *aff'd*, 698 F.2d 966 (9th Cir. 1982), in which the plaintiff claimed that the defendants had copied her book about the effects of the Vietnam War on returning soldiers when they made the movie *Coming Home*. The *Jason* court granted summary judgment in favor of the defendants, holding, *inter alia*, "[i]n sum, there is not one shred of evidence that any of the defendants who were involved in producing 'Coming Home' had access to Jason's book during production except for plaintiff's undisputed claim that between 200 and 700 copies were available through various Southern California bookstores. That level of availability creates no more than a 'bare possibility' that defendants may have had access to plaintiff's book." *Id*. at 776-77; *see also Art*

9

*Attacks Ink, LLC v. MGA Entertainment, Inc.*, 2007 WL 1989631, at *2 (S.D. Cal. July 2, 2007) (holding geographical proximity of corporate and individual defendants' office and residence to fairs where plaintiff sold art featuring cartoon characters insufficient to defeat summary judgment as a matter of law); *Levine v. Oxford Press*, 1993 WL 377630, at *3 (N.D. Cal. Sept. 13, 1993) (granting summary judgment to defendant in copyright infringement case where, *inter alia*, plaintiff's only evidence of access was that defendant resided in same area as person who allegedly gave defendant plaintiff's manuscript).

### III.     Similarity

Plaintiff contends that he need not have evidence of access because the following shared characteristics between the two works are so strikingly similar that only copying can account for the similarity:  (1) both are anthropomorphized rectangular sponges; (2) both are named "Bob"; (3) both have "nearly identical eyes"; (4) both have "nearly identical smiles"; (5) both have arms and legs that are very similar; (6) both have "nearly identical shoes"; (7) both are looking for work; and (8) both have been associated with the term "Sponge for Hire."

"There is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 52 (2d Cir. 2003) (internal quotation omitted).  "[W]here the works in question are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Id.* at 56 (internal quotation omitted).  "In all cases, the task is to apply logic and experience to determine if copying is the only realistic basis for the similarities at hand."  4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.02[B] at 13-28.1.

Plaintiff relies on *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167 (7th Cir. 1997).  In that case, the plaintiff Ty, Inc., manufactured "Beanie Babies" and had obtained an injunction against the defendant preventing the defendant from selling an infringing stuffed bean-bag pig. The Seventh Circuit upheld the injunction, finding a striking similarity between the two stuffed bean-bag pigs.  The court noted that the infringing pig looked almost identical to the Beanie Baby pig in that they had identical snouts, were the same size and shape, neither stuffed pig looked like an actual pig, and both stuffed pigs

10

had three toes, rather than cloven hooves (as actual pigs have). *Id.* at 1170-71.

Here, the similarities between "Mr. Bob Spongee" and SpongeBob SquarePants are much less striking. Plaintiff emphasizes the facts that both characters use the name "Bob" and are anthropomorphized sponges; however, not only is "Bob" a common name, but more importantly, defendant Hillenburg has submitted uncontroverted evidence that he created "Bob the Sponge," an anthropomorphized sea sponge, in 1989 – two years before plaintiff created "Mr. Bob Spongee."

The only way in which the two characters are physically similar is that they are both rectangular anthropomorphic sponges, with arms and legs, and big round eyes. However, these are simply stock elements that flow from the idea of humanizing a sponge. Moreover, the differences between the comic strip version of Mr. Bob Spongee – the only version that is copyrighted – and SpongeBob SquarePants are numerous[5]: Mr. Bob Spongee is one-dimensional and SpongeBob SquarePants is three-dimensional; Mr. Bob Spongee is not textured, while SpongeBob SquarePants is textured; Mr. Bob Spongee has lines for eyebrows and no eyelashes and SpongeBob Square Pants has no eyebrows and three eyelashes over each eye; Mr. Bob Spongee is not wearing clothes, while SpongeBob SquarePants wears a shirt, tie, shorts/pants, and socks; Mr. Bob Spongee has a line for a mouth and SpongeBob SquarePants has two prominent buck teeth; and Mr. Bob Spongee has a dot nose while SpongeBob SquarePants has a pickle-shaped nose. The simple fact that both are anthropomorphic sponges is insufficient to show striking similarity. *See Pasillas v. McDonald's Corp.*, 927 F.2d 440, 443 (9th Cir. 1991) (no substantial similarity between two masks depicting man in the moon when only similarities were crescent moon shape, depiction of human face in the center of the crescent, white or off-white color, and design enabling masks to be worn over person's head); *cf. Cory Van Rijn, Inc. v. California Raisin Advisory Bd.*, 697 F. Supp. 1136, 1144-45 (E.D. Cal. 1987) ("common idea of anthropomorphic raisin" not subject to copyright protection).

With regard to character traits or story line, as discussed *supra*, Mr. Bob Spongee is not well-

---

[5] The differences between the *Oakland Tribune* advertisement and SpongeBob SquarePants, and between the sponge doll and SpongeBob SquarePants, are even more numerous. The character depicted in the advertisement does not resemble a sponge and instead looks human, has hair, ears, a bulbous nose, human-shaped feet, and is wearing a hat. The sponge doll (assuming it is an accurate replication of the original) is very simplistic, does not have arms or legs, and has lines for eyebrows, a round dot nose, and a line for a mouth.

11

defined. However, aside from the fact that SpongeBob SquarePants is a well-defined character, there are several obvious differences between the two characters: Mr. Bob Spongee lives above ground in a house, while SpongeBob SquarePants lives in the ocean in a pineapple; Mr. Bob Spongee is married with a daughter and SpongeBob SquarePants is not married and appears adolescent; and Mr. Bob Spongee is an unemployed former soap factory worker, while SpongeBob SquarePants is an employed cook at a restaurant. The Court disagrees with plaintiff's assertion that the SBSP pilot is an "obvious continuum" of the comic strip simply because Mr. Bob Spongee loses his job at the soap factory in the final panel of the strip, while in the series pilot SpongeBob SquarePants gets his first job working as a cook in a restaurant. Far from being strikingly similar, the two stories – to the extent that the comic strip can be said to have a story – are opposite.

Plaintiff notes that Mr. Bob Spongee lives on Apple Street while SpongeBob SquarePants lives in a pineapple; there is nothing similar about these places other than that both are named after fruits. Plaintiff also finds an alleged similarity in the fact that Mr. Bob Spongee's daughter's name is "Bubbles" and SpongeBob SquarePants has a friend named Sandy Cheeks the Surfer Squirrel who has a dome/crash helmet on her head. There is no physical likeness between Bubbles and Sandy Cheeks, *compare* Walker Decl. Ex. A *with* Hillenburg Decl. Ex. E at VIA00246, and to find a similarity based on "Bubbles" the name and the bubble-shaped crash helmet worn by Sandy Cheeks the squirrel is ludicrous. Similarly, plaintiff asserts that the character of Linda, Mr. Bob Spongee's wife, is similar to SpongeBob SquarePant's grandmother because both are submissive female characters. Linda is featured in one of the four panels of the comic strip, and the only information the reader is provided about Linda is her name and the fact that she is Mr. Bob Spongee's wife and lives with him on Apple Street. The comic strip provides no information to convey that Linda is submissive.

In sum, the Court holds that the similarities between the two characters are limited to the stock elements used to humanize a sponge, and that the dissimilarities are so significant that, as a matter of law, defendants are entitled to summary judgment on plaintiff's claim of copyright infringement. In addition, defendants have submitted extensive and undisputed evidence of defendants' independent creation of SpongeBob SquarePants, further supporting summary judgment in favor of defendants. *See Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 548 (S.D.N.Y. 2007) (granting summary judgment in

favor of defendants based on lack of similarity and noting that "evidence of independent creation introduced by defendants can serve to bolster a finding of a lack of striking similarity.").

### IV.     Attorneys' fees

Defendants request an award of prevailing party attorneys' fees pursuant to 17 U.S.C. § 505. The Court finds that this case was brought in good faith, and exercises its discretion to DENY the request for attorneys' fees.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment. (Docket No. 57).

**IT IS SO ORDERED.**

Dated: May 13, 2008

SUSAN ILLSTON
United States District Judge